FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 JUN 29 AM 8:45
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JANICE MAE DENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 109-085 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Janice Mae Dennis ("Plaintiff"), appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff applied for DIB and SSI in November of 2004, alleging a disability onset date of November 10, 2004. Tr. ("R."), p. 14. The Social Security Administration denied Plaintiff's applications initially, R. 32-35, and on reconsideration, R. 27-30. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing

on August 26, 2008. R. 25,166-204. Plaintiff, who was represented by counsel, testified on

his own behalf at the hearing. R. 169-204. On September 29, 2008, the ALJ issued an

unfavorable decision. R. 14-22.

Applying the five step sequential process required by 20 C.F.R. §§ 404.1520 and

416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 10, 2004 the alleged onset date (20 C.F.R. §§ 404. 1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*).

2. The claimant has the following severe impairments: hypertension, heart problems, stomach and back problems (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).[1] In

---

[1] Sections 20 C.F.R. 404.1567(a) and 416.967(a) define sedentary work, and not light work as indicated in the ALJ's decision. However, the ALJ goes on to define light work, and adopts the RFC of a non-examining state agency physician, which indicates that Plaintiff can perform light work. R. 17, 19. Thus, this appears to be a mere scrivener's error, despite the ALJ's use of sedentary work in Step 5. However, as explained in footnote 2, *infra*, whether the ALJ intended to utilize light or sedentary work has no effect upon the validity of the ALJ's opinion. Under 20 C.F.R. §§ 404.1567(b) and 416.967(b), light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such

addition, the claimant has postural limitations that include occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, as well as occasional balancing, stooping, kneeling, crouching and crawling. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

5. If the claimant had the RFC to perform the full range of sedentary work,[2] considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical Vocational Guidelines ("grids") Rule 201.21, Appendix 2, Subpart P. The additional limitations have little or no effect on the occupational base of unskilled sedentary work. Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from November 10, 2004, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 16-21.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed this civil action

---

as loss of fine dexterity or inability to sit for long periods of time.

[2]Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) and 416.967(a). Because "if someone can do light work . . . she can also do sedentary work," 20 C.F.R. §§ 404.1567(b) & 416.967(b), the fact that the ALJ switched from light work in Step 4 to sedentary work in Step 5 has no effect upon the validity of the ALJ's opinion. Thus, the ALJ's use of sedentary work in Step 5 is validated by his finding that Plaintiff could perform light work in Step 4. The fact that Plaintiff could perform both light and sedentary work under the ALJ's analysis is argued strongly by the Commissioner as discussed, *infra*.

3

in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision.[3,4] Plaintiff argues that the ALJ erred because he failed to properly consider the opinion of Plaintiff's treating physician, John B. Bieltz, D.O. Pl.'s Br., p. 7. Plaintiff also claims that her case should be remanded based on the ALJ's sole reliance at Step Five on the grids. Id. at 8-10. Plaintiff alleges that a Vocational Expert ("VE") was required for the Commissioner to meet his burden of showing that there were other jobs in the national economy that claimant could perform due to claimant's non-exertional limitations. Id. The Commissioner maintains that: 1) the ALJ properly assessed Dr. Bieltz's medical opinion, based upon Dr. Bieltz's own medical records as well as the other medical records on file; and 2) the ALJ properly relied upon the grids without the use of a VE because Plaintiff's non-exertional limitations do not significantly affect either the light or sedentary occupational base. See generally Comm'r's Br.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards.

---

[3]On May 10, 2010, the Honorable J. Randal Hall, United States District Judge, granted the Commissioner's motion to remand pursuant to sentence six of Section 205(g) due to the loss of the claim file of Plaintiff's administrative proceedings. (See doc. nos. 10, 11.) Then on October 20, 2010, Judge Hall granted the Commissioner's motion to vacate the May 10th Order because the Commissioner had located Plaintiff's claim file. (Doc. no. 13.)

[4]The Commissioner states, and the record supports, that Plaintiff was awarded DIB and SSI on subsequent applications filed on July 9, 2009 with a disability onset date of March 1, 2009. Comm'r's Br., p. 2 n.2; R. 23-24.

4

Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails

5

either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Opinion of Treating Physician

The Court first turns its attention to Plaintiff's allegation of error regarding the ALJ's failure to properly address the opinion of treating physician, Dr. Bieltz. Plaintiff argues that the ALJ ignored evidence from Dr. Bieltz's records that indicated that walking was painful for Plaintiff, and that she should keep her knee iced and elevated. Pl.'s Br., p. 7. Plaintiff also criticizes the ALJ's reliance upon the RFC of a non-examining state agency physician because that physician did not have the benefit of Dr. Bieltz's records. Id. The Commissioner counters that, due to the lack of any follow up reports indicating that Plaintiff required any further treatment for her knee, as well as the fact that Plaintiff was only taking over-the-counter medications for her knee discomfort at the time of her hearing in August 2008, the ALJ properly determined that Plaintiff had the RFC to perform light work despite the above-cited portions of Dr. Bieltz's report. Comm'r's Br., pp. 5-6. The Commissioner further asserts that the ALJ properly relied on the RFC of the non-examining state agency physician because that physician did have the medical reports regarding Plaintiff's knee injury in 2004- the very injury that prompted Plaintiff's referral to Dr. Bieltz. Id. at 6-7. The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal

6

to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

As to the findings by state agency consultants, Social Security Ruling ("SSR") 96-6p indicates that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review.

Plaintiff argues that, in determining that Plaintiff had the RFC to perform light work, the ALJ failed to properly consider the part of Dr. Bieltz's treatment notes which indicated that walking was painful for Plaintiff and that Plaintiff needed to keep her knee iced and

7

elevated. Pl.'s Br., p. 7. Although neither party raises the issue in their briefs, it is worth noting that the designation of Dr. Bieltz as a "treating physician" under Eleventh Circuit precedent is, at best, questionable. The reasoning behind presumptively giving a treating physician's opinion substantial weight is that, such a physician's opinion is more likely to provide "a detailed, longitudinal picture" of the plaintiff's medical impairments. Lewis, 125 F.3d at 1440. The Eleventh Circuit has stated on multiple occasions that a physician who examines the plaintiff on only one occasion is not considered a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (finding that one time examiners are not treating physicians, and therefore, their opinions are not entitled to deference); see also Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (declining to apply the treating physician rule to a physician who only saw the plaintiff a single time); Scott v. Astrue, CV 510-111, 2011 WL 1058960 at *6-7 (M.D. Fla. Mar. 21, 2011) (stating that a one time examination necessarily implied that the doctor was an examining physician and not a treating physician). Here, Dr. Bieltz only saw Plaintiff a single time, and thus, precedent does not support his designation as a treating physician, but rather as a one-time examiner. However, as both parties concede to Dr. Bieltz's classification as a treating physician, this Court will treat him as such for the purposes of this R&R.

However, even treating Dr. Bieltz as a treating physician, the Commissioner correctly asserts that the ALJ properly concluded that Plaintiff had the RFC to perform light work, despite Dr. Bieltz's opinion that Plaintiff could only walk with pain and needed to keep her knee elevated and iced. See Comm'r's Br., pp. 5-7. The ALJ's RFC determination is supported by Dr. Bieltz's own records, as well as the other medical records on file, and the

opinions of non-examining state agency physicians.

First, Dr. Bieltz's own records support the ALJ's decision to discount Dr. Bieltz's observation that Plaintiff could only walk with pain and needed to keep her knee elevated and iced, in determining that Plaintiff had the RFC to perform light work. As the ALJ pointed out in his decision, Dr. Bieltz noted that Plaintiff's knee only had moderate effusion, that her quad tendons were intact, that her patella was tracking well, and that she had no gross varus or valgus instability. R. 19, 159. The ALJ also noted that, although an X-ray of Plaintiff's knee revealed an avulsion type fracture, Dr. Bieltz felt that the injury was probably old, and could be treated conservatively. R. 19, 159-60.

Furthermore, the fact that Plaintiff had no follow up visits with Dr. Bieltz also supports discounting his opinion. Plaintiff met with Dr. Bieltz only once in January of 2005 in regards to a knee injury that occurred approximately six months before. R. 159. At that time, Dr. Bieltz treated Plaintiff's knee with an injection and a prescription for the painkiller Ultram, and noted that he would check with Plaintiff in a few weeks to schedule further procedures, such as an MRI, <u>if necessary</u>. R. 160 (emphasis added). However as the Commissioner correctly observes, Plaintiff's medical record is devoid of any follow up visits with Dr. Bieltz. Comm'r's Br., p. 6.

In addition, the other medical records on file support the ALJ's conclusion that Plaintiff had the RFC to perform light work. For instance, the treatment notes from Plaintiff's regular clinic (Medlink) indicate no further treatment of Plaintiff's knee problems after Plaintiff met with Dr. Bieltz in January 2005 through the end of records in 2007. R. 137-40, 151-57. Additionally, as noted by the ALJ, at the time of the hearing in August

2008, Plaintiff was only taking over-the-counter pain medications, such as Aleve and Tylenol, for her knee discomfort. R. 20, 158. The ALJ also noted that the treatment notes from June 2005 through December 2007 from Medlink indicate that Plaintiff's lower extremities were normal. R. 20, 151-57. Finally, the ALJ observed that Plaintiff had not required more aggressive medical measures such as "steroid medication . . . application of TENS equipment, or enrollment in physical therapy or a pain management program."[5] R. 20. Thus, the ALJ's conclusion that Plaintiff had the RFC to perform light work is supported by substantial evidence from the other medical records on file.

Lastly, despite Plaintiff's argument to the contrary, the ALJ's determination that Plaintiff had the RFC to perform light work is also supported, and not harmed, by the ALJ's reliance upon the RFC of a non-examining state agency physician. Plaintiff criticizes the ALJ's reliance upon the RFC of a non-examining state agency physician because that physician did not have access to Dr. Bieltz's medical records. Pl.'s Br., p. 7. However, as correctly noted by the Commissioner, the non-examining state agency physician did have access to the medical reports regarding Plaintiff's 2004 knee injury- the same injury that Plaintiff saw Dr. Bieltz about. Comm'r's Br., p. 20; R. 19, 122-29, 159-60. In relying upon the RFC of the non-examining state agency physician, the ALJ noted that he did so because it gave "sufficient consideration to the claimant's impairments and limitations arising therefrom, and [took] into account the objective medical evidence." R. 19.

As explained, *supra*, under SSR 96-6p, findings of fact made by state agency

---

[5]The ALJ also observed that Plaintiff had worked as a cook from 2006 through May of 2008. R. 20.

physicians regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. In addition, the RFC of the non-examining state agency physician is well supported by the medical records of evidence described above. Therefore, the ALJ was well within his discretion to adopt the opinion of the non-examining state agency physician.[6] Thus, in sum, the ALJ's determination that Plaintiff had the RFC to perform light work is supported by substantial evidence, including Dr. Bieltz's own records, the other medical records on file, and the expert opinion of a non-examining state agency physician.

**B.     The ALJ Correctly Relied Upon the Grids without Consulting a VE**

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform her past relevant work but had the RFC to perform light work with postural limitations including occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, as well as occasional balancing, stooping, kneeling, crouching and crawling. R. 17. Because Plaintiff could no longer perform her past relevant work as a cook or textile worker, R. 20, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given her age, education, previous work experience, and RFC. See Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th

---

[6] The Court also notes that the ALJ rejected the RFC of another non-examining state agency physician who had seen Dr. Bieltz's medical records because it failed to "take [into] account the claimant's impairments and limitations arising therefrom." R. 19, 143-50. In fact, the rejected state agency RFC was much less favorable to Plaintiff than the one the ALJ adopted. For example, the RFC that the ALJ adopted indicated that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, whereas the rejected RFC indicated that Plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally. R. 19, 122-29, 143-50.

Cir. 2004). In this regard, the ALJ found that Plaintiff's postural limitations had "little or no effect on the occupational base of unskilled sedentary work." R. 20. Thus, relying exclusively on the grids and choosing not to obtain the testimony of a VE, the ALJ determined that Plaintiff was not disabled. Id.

Plaintiff argues that her postural limitations do significantly limit the sedentary work base, and therefore, the ALJ erred by not utilizing a VE in determining the type and amount of gainful employment that Plaintiff can perform in the national economy. Pl.'s Br., pp. 8-10. The Commissioner contends that the ALJ properly relied upon the grids because Plaintiff's postural limitations do not substantially limit the occupational base of not just unskilled sedentary work, but light work as well. Thus, the Commissioner asserts that the ALJ could just as well have utilized the occupational based of unskilled light work at Step Five, while properly relying upon the grids. The Commissioner has the better argument.

Plaintiff contends that the ALJ's reliance upon the grids without consulting a VE was inappropriate. Plaintiff cites the standard enunciated in Phillips v. Barnhart, which states:

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Therefore, we must determine whether *either* of these two conditions exists in this case. If *either* condition exists, the ALJ was required to consult a vocational expert.

357 F.3d 1232, 1242 (11th Cir. 2004) (alterations and emphasis in original). Plaintiff argues

that the ALJ failed to make a finding based on the evidence as to whether her exertional[7] or non-exertional[8] limitations eroded her ability to perform a full range of work at the sedentary level. Pl.'s Br., pp. 9-10.

The first inquiry, whether a claimant can perform the "full range of work" at a residual functional level, only applies to exertional limitations. See Phillips, 357 F.3d at 1242-43. Here, the ALJ took all of Plaintiff's exertional limitations into account when determining that Plaintiff could perform a full range of light work. R. 17. In fact, in doing so, the ALJ conducted a thorough review of Plaintiff's medical records from 1999 through 2007. R. 18-20. First, the ALJ discussed and accounted for Plaintiff's back problems, indicating that an MRI of the lumbosacral region of Plaintiff's spine in April of 1999 was negative. R. 18. The ALJ also addressed Plaintiff's chest pain, indicating that records reflected that Plaintiff's vasculature was within normal limits and she had no infiltrate, edema or effusions identified. Id. The ALJ next turned to Plaintiff's hypertension, noting medical records which indicated that Plaintiff had ceased taking Clonodine and Toprol XL,

---

[7]An exertional limitation is an impairment-caused limitation of any of the seven strength demands, which include: sitting, standing, walking, lifting, carrying, pushing, and pulling. See SSR 96-6p.

[8]A non-exertional limitation is:

> [A]n impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be non-exertional.

SSR 96-6p. Postural limitations are a sub-category of non-exertional limitations which include: climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, and crawling. Id.

13

the two medications prescribed for her high blood pressure, and had to be reinstated on those medications by her physician, D.T. Kirk, M.D. Id. Dr. Kirk also indicated in his notes that Plaintiff was very noncompliant, and had not been taking her medications. R. 18-19. The ALJ also addressed Plaintiff's knee problems, as discussed, *supra*. R. 19.

The ALJ then stated directly that "having considered the objective medical evidence, the claimant's subjective complaints, and the opinions of treating, examining, and non-examining physicians," he found that Plaintiff "retains the residual functional capacity to perform a <u>full range of light work</u>. R. 20 (emphasis added). As discussed, *supra*, in footnote 2, because "if someone can do light work . . . he or she can also do sedentary work," the ALJ's decision also indicates that, taking into consideration Plaintiff's exertional limitations, she can also do a full range of sedentary work. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). Therefore, Plaintiff's argument that the ALJ failed to determine the effect of her exertional limitations on her ability to perform a full range of sedentary work is without merit.

The ALJ also addressed the effects of Plaintiff's non-exertional limitations on her ability to perform a full range of work at the sedentary work level. Non-exertional limitations significantly limit basic work skills when they prevent a claimant from performing a "wide range" of work at a given RFC level. See Phillips, 357 F.3d at 1243. This includes both the exertional (light, medium, heavy, and very heavy work) and non-exertional (unskilled, semi-skilled, and skilled work) components. See id. For example, the Eleventh Circuit has previously noted that reliance on the grids would be appropriate if the ALJ made an explicit determination that a claimant's non-exertional limitations did not

14

preclude her from performing a wide range of jobs at the light, unskilled RFC level. Vuxta v. Comm'r of Soc. Sec., 194 F. App'x 874, 878 (11th Cir. 2006) (*per curiam*).

Here, the ALJ made a similar finding to that of the ALJ in Vuxta when he determined that Plaintiff's non-exertional impairments "have little or no effect on the occupational base of unskilled sedentary work." R. 21. In fact, several other district courts in the Eleventh Circuit have found that a claimant could still perform a wide range of work, and thus, a VE was not required, when the ALJ found that non-exertional impairments had little or no effect on the occupational base of unskilled work. See Morse v. Astrue, CV 508-291, 2010 WL 1257713, at *6 (M.D. Ga. Mar. 29, 2010) (stating that the ALJ properly relied solely on the grids when he determined that claimant's postural limitations would have little to no effect on the occupational base of unskilled sedentary work); Brown v. Astrue, CV 608-036, 2009 WL 2135005 at *3-4 (S.D. Ga. July 15, 2009) (finding that the ALJ properly relied solely on the grids when he determined that the plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled work at all exertional levels); Williams v. Astrue, CV 308-608, 2009 WL 902485, at *5 (M.D. Ala. Mar. 31, 2009) (finding that the ALJ was not required to consult a VE when he found that the plaintiff's non-exertional impairments had little or no effect on the occupational base of unskilled light work).

Furthermore, the Commissioner cites to several Social Security Rulings that support the ALJ's determination that Plaintiff's non-exertional impairments had little or no effect on the occupational base of unskilled sedentary work, as well as the Commissioner's assertion that the same holds true for light work. For example, the ALJ found that Plaintiff could occasionally stoop and crouch, and SSR 83-14 states that, in most sedentary or light jobs, a

person would never need to crouch and would only need to stoop occasionally. SSR 83-14, *2, 4. Additionally, SSR 85-15 states that, although some amount of stooping is required for most any kind of work, as long as an individual can stoop occasionally, "the sedentary and light occupational base is virtually intact." SSR 85-15, *6-7. Furthermore, SSR 96-9p goes as far as stating "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, *7. In sum, despite Plaintiff's assertion to the contrary, the ALJ's reliance upon the grids is supported by both applicable case law and Social Security Rulings. Thus, the ALJ's use of the grids in the absence of a VE was appropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED AND RECOMMENDED this 29 day of June, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE